Good morning, Your Honors. May I please support Michelle Doolin on behalf of the appellant Barnes & Noble, Inc. The issue before the court today is whether the plaintiff in this case should be compelled to arbitration. And it's our position that the district court below failed to consider the totality of the circumstances of this particular case. In this particular case, which is different than all of the cases that were cited by the plaintiff, and that is urging both this court and the district court to follow. As here, the plaintiff is affirmatively trying to enforce a very specific term in the very contract that, at the same time, he's saying he's not bound by. What about severability? Severability is a complete red herring, Your Honor, because severability is an issue that the court would decide or an arbitrator would decide. The plaintiff does not get to pick and choose severability. Why can't we decide it on appeal? By just, say, for example, there is a severability provision, right? There is a severability provision. So if we analyze the contract based upon appropriate law, of course choice of law is an issue, then why can't we decide whether or not it's severable? Well, there's two reasons. The court can use its discretion to rule on issues that the district court did not rule on. However, the district court did not address the issue of unconscionability or severability below, and I don't think it's appropriate for the court at this time to actually make that finding. However, if the court was going to make that finding, in the sense of severability, the issue of severability would be very limited. There's case law specifically, the Federal Arbitration Act, the public policy is to enforce arbitration. And so when you're looking at what would be severed, it wouldn't be the entire provision. It would be, it should be with an eye to what is it exactly that could be severed to save the arbitration provision in its entirety, not the entire contract of the... First, as opposed to the arbitration provision. The Federal Arbitration Act, I agree with you, certainly encourages arbitration. The Supreme Court has said that a number of times. But the issue of severability is often first to save the contract. Well, the issue of severability would be severability of what the plaintiffs are asking for the entire provision of the arbitration to be severed. But, again, that's a broader issue than what I think would be appropriate for a court to consider. The issue to be considered would be within the arbitration provision, which would be, is there some particular line or particular term that could be severed to save the arbitration clause within the contract, not that we would just sever the arbitration provision in its entirety. But separate and apart from that, the issue here, again, with what severability, the problem here is not just severing. The plaintiff is specifically, of course, in the record, it's page 117 of the record, the plaintiff quotes, just because the plaintiff has alleged that one term is enforceable, it does not follow that the entire contract is enforceable. The plaintiff has cited absolutely no law to support that proposition. And this court in the Ninth Circuit has held in other cases that you don't get the benefits of a contract without taking the burdens. It's as simple as an employee coming on Friday to collect their check when they didn't do any of the work. And when they're asked about why they're collecting their check and the employer says, you didn't do any of the work, they say, well, we don't want to pay attention to that part of it. We just want to show up and get paid. It's no different. And no case in any of these contexts where it's online, in person, in a paper contract, or by conduct, does a party, it's fundamental contract law, get to come into a court, file a nationwide class action, assert benefits of a particular clause that is literally within half an inch next to the very clause they're saying they're not going to file. I don't gather that that's what they're asking for. What they're asking for is that they thought they created a contract to purchase two 16 GB HP touchpad tablets that were at a great discount because they ordered it and they received a confirmation of their order, but then Barnes & Noble was not able to fill that order. And so that's the breach or the fraud that they're, I don't know how they, I can't remember how they, this is the last case. It's a very long one. I can't remember what their precise claim is, but that's what they're saying. It was the fraudulent practice, was the advertisement, and that the contract they're relying on is the purchase of the book, the tablet. And they didn't get that when they had a confirmed order for it. Well, they are relying on the terms of use that are at issue in then using the website, placing the purchase, placing a previous purchase, as well as placing the order at issue. So again... So I don't even see why they would need to rely on the terms of use. Well, they have, Your Honor. They have, Your Honor, because they're asserting they're a California resident and the only basis upon which they can assert a claim under New York law is based on the terms of use. But no one's even conducted a conflict of law analysis yet here. No. The district court only looked at the issue of whether or not there was notice of this, of the terms of use, and only in a very limited manner. The district court failed on a couple of grounds. One, the court did not consider the ratification of the agreement. I don't think, I really think that that is also a red herring. Because I'm sure once they, at some point, obviously an attorney got involved in this and got the terms of use to see what was going on here. And, you know, they were willing to go along with New York law applying, you know, once they learned about it. That's not necessarily the kind of intentional act by the plaintiff himself to create a ratification. Let's talk about, though, what you're, what Barnes & Noble is really doing here. I know it's called a browse-wrap agreement because there's no requirement that there's any affirmative act by the customer to agree to the terms of use. Right? That's the plaintiff's position, and there is affirmative action. What is the affirmative action? Okay, so the affirmative action that the plaintiff undertook in this particular case is a month prior to even the orders that are issued in this case, he went to the website. He did not just look at the website one time and flip through. He went to the website. He joined as a member of the website. He was using the website. What do you mean he joined as a member of the website? He became a member. He interned into information about himself to be able to get benefits through shipping and other attributes of being a member of the website. So was he a member of the website or a member of Barnes & Noble? Barnes & Noble through the website. Well, wait a minute. What do you become a member in? You're a member of the Barnes & Noble. There's like a club, if you will. A shopping community? Yes, but specifically you get benefits for doing that. It's not. Before you sign up as a member, is there any requirement that you accept the terms of use? There is, Your Honor. Where is that in the record? Okay. The issue of him placing his order in that context, he's also, so at that time he made a purchase. It wasn't just an order. He placed an order. He made a purchase. Throughout that process, again, what the district court did not look at is every single page that the person, Mr. The Plaintiff, was, it was in visible view right before him. What the district court looked at. You're not answering my question. I'm asking, what is the affirmative act that the Plaintiff, I mean, the Plaintiff did when to agree to the terms of use? There's three things. One, he was using the website. The terms of use bind him by using the website. He was using the website. He was using the website by making a purchase on the website a month previously, which when he gets to the screen, what the district court didn't look at was that it was on every page in the lower right, in the lower left-hand corner. He had to scroll down, though. That's one half of the equation. And that's what the court looked at, and that is clear error. Because on the record, in page 157, 158, 159, all the way through 64, it is not scrolling down. And that is the key difference between this fact and what the Plaintiffs rely on in both respects. But the problem is, though, it's very, it's with, it's terms of use, copyright, and privacy policy. Are you saying that anybody who purchases anything online from Barnes & Noble has to click on all those things? I mean, I buy things online. I never clicked on all those things. Are you saying I would be bound to arbitration or other things that could be in all of that just by going on the website? And let me add to that also, it was just a link. It didn't give the exact details of what he was agreeing to, so it was a link. Okay. Two specific points. In this particular case, there was absolutely no scrolling necessary to see the link, terms of use. I realize that distinguishes it from Justice Sotomayor's second case. I realize that's a distinction from that particular case. Yes, and it's also a distinction between the Hines case, which is the other case that the Court ruled on, and in particular, the evidence in that case where the Plaintiff said, I could not see it without scrolling. When an individual is engaging in a transaction, this is not a one-click transaction. This is not a free download. This is a commercial transaction where the person is sitting at a computer. They are getting to the screen. When they get to the screen, they've got to enter information, not just what's your favorite dog, your credit card information. You have to turn over and give your security code. You have to check your address. You're providing information. So you're saying you're making an argument that any person who was responsible would, before they turned over all this confidential information, would check the terms of use? Absolutely. You're required to look at, if you choose not to read a contract, it's never a defense. Well, you have to ascend to it. Well, there's case law. No, there's no case that's precisely on point with this one, except for one that neither party cited, which my law clerk found and which, frankly, goes against you. But it's a district court opinion from somewhere. Let's see, it's from, where is it? Oh, it's from Central District of Illinois. But in that case, it's exactly your term, your thing, but in that case, before you could place your order, the step four, the last step, was you review the terms. They told them to review the terms before they could place the order. So they were on notice that they needed to review the terms. Let me ask you, once you go to your terms of use, do you have a thing to click on for I agree or I disagree? No. No. You don't have that, and that's the problem, isn't it? That's not a problem, Your Honor. Well, you don't think it's a problem, but ordinarily, I mean, you wouldn't be here if it said I accept. In fact, you have to get to the point. What you're saying is you have to be extraordinarily careful, and the question is whether a reasonably prudent user would have to have read the terms and condition, which was part of a link. Isn't that what you're saying? And do we look at this in conjunction then also with how is the agreement construed, against or in favor of Barnes & Noble? First and foremost, when you're entering into a contract, whether you choose to read it or not is never a defense, and the case law is clear on that. They weren't entering into a contract. They were buying a tablet. They were entering into, they were placing an order, and they had previously as well on the same website made a purchase. They had entered into a commercial transaction. So out of this, does Barnes & Noble want the message to be don't shop at Barnes & Noble because if you order something online, you're going to get stuck with all these terms of use that you may never have even looked at or didn't even notice were there? Absolutely not, Your Honor. Barnes & Noble's position is that the terms of use of a hyperlink, which has been decided in numerous cases, is noticed. It's just it's no different than the case that this court decided in 1987, the De Niro versus American Airlines. In the airlines case, that individual was wanting to assert a claim against last damage to their cargo, which happened to be dogs. Very unfortunate. Nine of them, I guess, died. But the reality is that customer basically said, yeah, I bought the ticket. This court said if it was only on the ticket, maybe it's a close call. But we look at the facts. This person had traveled before. This particular plaintiff has his own website with terms of use on it in the exact same format. In this case, the plaintiff has his own website with a link that says legal. He had used the website in the past. He's an avid user of the Internet. He has multiple links to Facebook, all sorts of other websites that use very similar. Your position is that this case, it's case specific, and this particular plaintiff, as a reasonably prudent person, should have read the terms before he agreed. Is that what you're saying? I'm absolutely saying that. And either he did or he didn't. But assuming that he should have, he then would have had to agree to the arbitration. He could have chose not to look at that. But, yes, he absolutely was on notice. That's a narrow case. What the court said was, in that case, the testimony from that individual customer was, I saw stuff down there. I didn't look at it. Well, that's not a defense. If you choose not to read a contract, even when someone is illiterate and cannot read, if you know you're signing something but you choose not to read it, it's not a defense. And that's basically what this plaintiff did. He came to our website, and what the district court did not consider on this particular case was what he did prior to even that issue, which is he made a purchase, he used the website, he was bound. He was not in some hurry-up situation. He didn't say anything about that. He used it in that particular time. He saw that screenshot six times in that transaction where he does not have to scroll. Then he comes back. He makes another order again. That's 12 pages where it's right there. The issue of arbitration, though, is pretty significant, isn't it? So that if it merely says the terms and conditions, that doesn't alert somebody to, you are giving up your right to sue. And so shouldn't it be clear that you better check this out? Because terms and conditions do not always include a waiver of litigation and an obligation to engage in arbitration. And the record doesn't establish that, and you're not asking us to find that as a matter of law, are you? Terms of use is the trigger to there are terms that are governing this. You want to know what they are? You need to look at them. But if your client, which, of course, is enormously important to your client, wanted anybody who purchased something to waive their right to litigation, why would they just merely say terms of use and not say you accept waiving your right to litigation? I don't think that there's a distinction between adding an arbitration provision in there to the terms of use. The terms of use cover all sorts of things. That's right. But something as significant as this, anybody who's purchasing something, if you wanted them to be sure they understood they were waiving their right to litigation, wouldn't you have and wouldn't it be an ordinary prudent person would have expected? They would have to have affirmatively accepted it. The case law does not support that position, Your Honor. The case law, there are differences, and clearly, cases will say, if you put a click, would that make it maybe at a different standard? Yes. But is that required? No. I mean, for example, in the Facebook case, the FEDA versus Facebook case, very specifically, the court said, this person is an avid Facebook user, and they're coming in and they're suing, saying, I'm not bound by these terms of use. It's literally what it is. And the court says, we're not going to look at it and say, it needed to say click here, terms of use. The paper contracts, I would argue, in an online context, the person has more notice than if it was an individual paper, and you're just flipping to the end. You can automatically get to the end, right, in a multi-page contract. You say, okay, it's three pages. I go to the end. In this particular instance, the person is online. They are stopped throughout the process to enter information, and you can't just scroll down through the end, and you have to take the time to fill things out. And it is right there. It is one inch away, and it is no different than all of the paper contracts or the cruise line cases that says, you could have them on the back, and you can say, turn over. It's no different. There's also a lot of the cases talk about the classic Apple case. Do you have any, any, any one case where the terms of use were only available via hyperlink and the website did not explicitly warn the user that the terms applied? I believe that the Hubert case, and I do believe that saying terms of use in today's world is disclosure right on its face, that there's terms of use and you're subject to it. Cases 15 years ago may have been different, but in today's world, and with this particular plaintiff who has his own website, it is disclosure. And the Hubert and the major case. But you don't have a case that's directly on point. I do. I have. There is no case specifically that includes all of the facts of our case, which I think our case makes it much stronger for my client, because we have the unique factors of the plaintiff. We have the ratification after. Whether you hire a lawyer or not, you don't get to come in after the fact and say, all right, you've made your arguments. Thank you. Good morning. May it please the Court. Gretchen Carpenter representing Mr. Wynn. And I have John Segley with me. And Mr. Wynn is also in the courtroom today. I'd like to focus my argument on the key issue that the Court has obviously already picked up on, which is that there was no agreement to arbitrate here, as the District Court properly found. Just taking a look at the facts, what we have is someone logging on to BarnesandNoble.com, attempting to purchase two touchpads during a fire sale, going through the checkout process, having no actual notice and no reason to notice the terms and conditions on the very bottom of the page in small font for what the plaintiff thought was a simple purchase transaction. Barnes and Noble. No reasons to notice. So why don't you respond to what Appellate Counsel has said about reason to notice? Your Honor, this. Because this is, it is a reasonably prudent user standard, isn't it? Yes, Your Honor. Okay. So in this case, why? In this case, we have a normal consumer purchasing a product on a website. We have, if you think you're engaging in a simple purchase transaction, doesn't put you on notice that there are terms of use on a website that apply specifically to your purchase transaction. And here we have a situation where there's absolutely no indication anywhere except within the terms of use themselves that says that these terms of use apply to a purchase transaction on the website. A reasonable person, if they notice the terms of use link at all, maybe thinks the terms of use apply to copyright and privacy type issues, which wouldn't be implicated by a simple purchase transaction. So we have Barnes & Noble not requiring an affirmative click that there's an assent to the terms of use in general or specifically to the arbitration clause therein. There's not even so much as a suggestion that the plaintiff should review the terms of use, nor is there anything during the checkout process that says you are going to be So this case has implications for every person, every business that's selling things online right now, right? Do you agree with that? Yes, Your Honor. And I believe what Barnes & Noble is effectively asking for is an exemption from the mutual assent requirement for an online purchase. Barnes & Noble, if you go into Barnes & Noble stores, I'm quite sure when you purchase a book, they're not handing you an almost 7,000-word contract and telling you that you are going to be bound by that. I happen to be a Barnes & Noble member. I have the card, and I do shop at Barnes & Noble, and I've never seen a terms of use in the in-store. And there's no reason the situation should be different here. We have the same type of a transaction. We have a consumer. This is not a commercial transaction in the sense of sophisticated commercial parties. This is a consumer case on behalf of consumers. And we have Mr. Wynn testifying in his declaration that he did not notice the terms of use. It appears, in fact, that Barnes & Noble went fairly far out of its way to make sure that customers didn't know about the terms. Unlike in other cases, they did have it in contrast. It was a different color at the bottom, and you didn't have to scroll down in every case to see that. Doesn't that make a difference? Your Honor, no, it doesn't. First of all, the scroll down is required on the first page, and it's also separated by substantial advertising material. I believe it shows up when you print out the page on page five or six, so that's on the home page. Once you start going through the checkout process, it is on the left-hand bottom of the page, and it is in a green underlined typeface. But the green appears throughout the actual web page. I think Barnes & Noble's logo has green in it, so it doesn't particularly stand out. And in any event, as the district court properly found, there wouldn't be any reason to know those terms of use would apply to a transaction such as this. Well, if someone is looking at it, a reasonably prudent person, why wouldn't they look at it? I mean, what else are they going to think about when they see terms of use? Well, that assumes, first of all, that the consumer even notices that there are terms of use, which here Mr. Wynn didn't. Why wouldn't a reasonably prudent purchaser be required to take a look at everything as appellant's counsel said? It's on paper. Why would a reasonably prudent person be allowed to ignore it? Because from Mr. Wynn's perspective, he's simply purchasing some touchpads in an online transaction. He's filling in his information, and he's clicking purchase. That's the extent of the contractual relationship as far as Mr. Wynn. I said terms of use. So terms of use of what? What is a reasonably prudent person going to think that means? A reasonably prudent person probably would have no idea what that means, and certainly I don't believe that. Whose obligation is it? It's Barnes & Noble's obligation to make sure it gets mutual assent for its contracts. So you're saying that that provision is construed against Barnes & Noble. Absolutely. They have an obligation to make sure if you're entering into this contract, you better know what it means. Yes, Your Honor. I believe that's true. So I have another question. Why did you make use of the agreement's choice of law provision when you believed that the agreement didn't bind your client? Your Honor, I think you were dead on when you said earlier that. That was just my speculation. I'm asking for what really happened. Why did we include the choice of law clause? Because. That was included for the first time in the lawsuit, right? In the complaint, yes, Your Honor. And the contract at issue in the complaint is the purchase contract, and it's the contract I just described where Mr. Wynn thought he was purchasing the touch pads, and there was a breach of that agreement because he never received them and his order was canceled. So that contract breach and the consumer claims that are asserted in the complaint, the statutory consumer claims, have nothing to do with those terms of use. And we did allege that the New York choice of law clause was enforceable in the complaint, and that was not a question of Mr. Wynn saying, oh, here's these terms of use that apply to my contract, and there's a – I agree with this, and so let's include a choice of law clause. So based on the facts, the district court made clear that she was considering all of the facts, that she had read the briefs, and that she did hear oral argument. And she found, based on those facts, that the defendant didn't post the notice in the location where consumers would see it and, in fact, didn't even give notice that the terms of use applied, and therefore there was no assent to arbitration. The district court did not ignore the plaintiff's evidence. It was all before the court, and the court acknowledged that it had read all the papers. Substantial case law does support the district court's ruling. We have the Second Circuit decision in the SPECT case. We also have the Heinz versus Overstock.com case, which is very closely on point. The court there didn't make a relevant distinction about whether there was a necessary scroll down on every page of the website. Also, the Zappos.com customer data security breach litigation cited in our circumstances to those present here. Basically, Barnes & Noble's argument comes down to because we placed the terms of use hyperlink within an inch to an inch and a half of where the customer had to input information in order to complete this purchase attempt, solely based on that fact, there was mutual assent here. And what that effectively will do is create an exemption for any online purchase transaction in a consumer setting like this. All of the cases cited by Barnes & Noble in this case are very easily distinguishable. The Hubbard case, which Ms. Doolin just mentioned, was a case where there were three online forms which said all sales are subject to Dell's terms and conditions. That doesn't exist here. Also, in the FEDA versus Facebook case, there was a note on the website that said a representation on the website. By clicking sign up, you're agreeing that you read and agree to the terms. We're not talking about a case where the plaintiff was handed a contract and chose not to read it. That's not the situation. Well, what's interesting is that we would clearly find him bound to the terms if there had been a box that said I agree to the terms of condition that you had to click before you could place your order. I think we would clearly find him bound whether or not he had read the terms and conditions because he had to do something affirmative. This is a case where he's not even asked to look at the hyperlink.  Are you aware of any particular case, any case on point in this? Well, Your Honor, the Zappos and the Hines case both found no agreements in those cases. Those cases are both cited in our briefs and very closely on point. I would argue the Spect case is also very closely on point. And how are they closely on point? Factually. Factually because you have website Internet transactions where there's a hyperlink where they are trying to hold the one party to the terms and conditions of the website where there's nothing to put the consumer on reasonable notice that they need to click on the terms and conditions. So it says terms and conditions in those cases or terms of use or what is the language in those cases? Your Honor, I apologize. I don't have it here, but they generally are terms, either terms and conditions or terms of use. I would be happy to look at it. No, that's okay. I'm going to read it. But terms and conditions probably would alert somebody that they better take a look at the conditions as opposed to terms of use. So we have terms of use here, and that's the parameters, right? Your Honor, I don't think it would make a difference because I think either way you need to tell someone that they're subject to those terms regardless if it's called terms and conditions or if it's called terms of use or it's called terms of use privacy and copyright policy. You need to inform the consumer other than in those hyperlinked terms of use that they are bound by them. Very briefly, I would like to address the unconscionability issue. If the Court doesn't have any further questions on the... Well, you're just about out of time, so just get to it. Okay. Very briefly, I'd just like to point out that we also have a very serious unconscionability problem with this arbitration agreement. This is an arbitration agreement that was imposed under extremely procedurally unconscionable conditions, most of which we've already discussed. Whose law applies on unconscionability? Your Honor, I think the result would be the same under either law, but under the Ninth Circuit decision in the Negrompa case, I think because we're a diversity jurisdiction, the California law would apply to the unconscionability analysis. But either way, I believe the result would be the same because what we have here is a very procedurally unconscionable contract, and the one-sidedness is very clear and undisputed. It specifically preserves Barnes & Noble the right to litigate in court at its discretion. Thank you very much. All right. Thank you very much. This case, Winn v. Barnes & Noble, will be submitted.
judges: Silver, Noonan, Wardlaw